**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. 3:16CR111** |
| **SHERMAN CARL VAUGHN, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

Sherman Carl Vaughn, Jr., by counsel, submits this Supplemental Sentencing Memorandum in support of his request for a sentence within the United States Sentencing Guidelines advisory guideline range of 70 – 87 months.  Mr. Vaughn filed his initial Position with Respect to Sentencing on December 14, 2017. On December 18, 2018, sentencing was continued and the undersigned was appointed to assist in Mr. Vaughn's defense. Because the Court is familiar with the underlying facts and procedural history of this case, as well as the applicable sentencing standards, they will not be set out again here. This Supplemental Memorandum is filed in an effort to elucidate, rather than merely reiterate, the many reasons under the factors in 18 U.S.C. § 3553(a) that a sentence within the advisory guideline range is appropriate in this case.

### History and Characteristics of the Defendant

Mr. Vaughn was raised in Nottoway County, "in a Christian home by two wonderful parents." Exhibit 1 (Letter of family friend Landa N. Ellington). Both of his parents "are highly respected former educators in Nottoway County." *Id*. His father is a retired assistant superintendent in the Nottoway school system and his mother is a retired teacher. Presentence Investigation Report ("PSR"), ¶ 37. As a child, Mr. Vaughn was "dependable, responsible and

1

never got into any trouble." Exhibit 1 (Letter of fifth grade teacher Yvonne Johnson, Ed.D.). He was "kind and cared about others . . . and leaned towards that which was right." *Id*. He was also generous towards others, "shar[ing] whatever he had with anyone regardless of their age, race or gender." Exhibit 1 (Letter of Mrs. Barbara Thompson, Blackstone Town Councilwoman). He was diligent and hardworking. His mother recounts that "From the time he entered kindergarten to twelfth grade he never missed a day of school. Not only was he a pretty good student, but he was extremely well-behaved, polite, and respectful to the teachers as well as the students. In his entire years of school he was never sent to the principal's office for misbehaving." Exhibit 1 (Letter of mother Cleola Vaughn).

In college at Virginia Union University, Mr. Vaughn played football and joined Kappa Alpha Psi fraternity, where he made many devoted life-long friends. He is described as "a dear and thoughtful friend . . . as well as a caring and selfless thinking person." Exhibit 1 (Letter of college classmate Charles A. Anderson). His college coach describes him as the type of person who "show[ed] up on time, work[ed] extremely hard, and led others. He was one of our best student-athletes." Exhibit 1 (Letter of coach Angriess Scott]. When a teammate lost his scholarship and was living out of his car, "Carl was among the first to make his couch and refrigerator available to me, despite being a college student himself." Exhibit 1 (Letter of Pastor Lewis L. Tucker, Jr.). Even after Mr. Vaughn obtained a bachelor's of science degree in business from Virginia Union, PSR, ¶ 47, he continued to mentor others: "Carl, through Kappa, has blessed a lot of young men with wisdom, character, and fresh definition of who they are, and what they can become through his mentorship." Exhibit 1 (Letter of Rev. Dr. Craig D. Ester).

Mr. Vaughn has a full history of employment prior to his activities with Cavalier Union Investments.  He operated a real estate construction company called Stone Estate and a computer

repair and networking solutions company called Stone Communications. PSR, ¶¶ 48-49. Because of the conditions of his pretrial home detention, he has been unable to meaningfully work – he in fact cannot leave his premises except to see counsel or a health care provider (or by order of court, which he has applied for periodically to assist his aging parents with medical appointments). In addition, Mr. Vaughn has been greatly hampered by a recurring medical condition arising from an incident in 2015 that resulted in four outpatient procedures and one surgical reconstruction. PSR, ¶ 44.

While Mr. Vaughn never married, he raised his daughter, now a 21-year old college student, as a single parent since she was nine. PSR, ¶ 39. He was a nurturing and responsible father, not only ensuring that the everyday tasks of parenting such as cooking, laundry and discipline were accomplished, but he also enriching his daughter's life with activities such as girl scouts, gymnastics and dance. Mr. Vaughn also helped raise his daughter's half-brother, who moved in with him when he was 17 years old. PSR, ¶ 40. Pastor Tucker notes that "He rais[ed] two children successfully as a single parent which took great patience and strength of character," Exhibit 1 (Letter of Pastor Lewis Tucker), and Rev. Ester adds that "Carl is a great family man. He has raised his daughter to be a fine upstanding woman who is getting close to finishing her college degree, and a son who is doing well also." Exhibit 1 (Letter of Rev. Ester).

Mr. Vaughn was raised in the church, PSR, ¶ 38, and continues to be a man of faith. Exhibit 1 (generally). He has painfully disclosed his transgressions to family and dear friends and all have responded with surprise and, importantly, support. They note that Mr. Vaughn is "humbled by what has happened and will make amends with the people he has hurt." (letter of Angriess Scott). "Carl regrets and is remorseful about he charges he is facing. He has learned many lessons from this experience . . .  and if allowed he will correct any wrong doings and

3

move forward in life. (leter of Yvonne Johnson, Ed.D.). Friend Charles A. Anderson, states "I pray that God comforts the victims and help them find peace and solace through our LORD and Savior Jesus Christ. Carl will have to stand in the fire soon and I know he will learn something valuable from this that will make him better on the other side of this experience." Mr. Vaughn echoes Mr. Anderson's observations. He knows he has hurt many people and his remorse is deep and genuine.

### *The Nature and Circumstances of the Offense*

Having presided over the five-day jury trial of co-defendant Merrill Robinson, this Court is well aware of the offense facts and Mr. Vaughn's role in this criminal conspiracy. From the day Mr. Vaughn received his target letter, he began working to correct his wrongs by accepting responsibility and meaningfully cooperating with authorities. He quickly entered into a plea agreement with the government and, when called upon, testified in the trial of Mr. Robinson.

### *The Need for Just Punishment*

Section 3553(a)(2)(A) requires a sentencing court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. In this case a sentence within the guidelines is sufficient but not greater than necessary to comport with the statutory sentencing goals.  To some extent, Mr. Vaughn's punishment began in September 2016, when he was placed, pretrial, on home detention with electronic monitoring. Since that time, he has lived in his parents' basement and is restricted to the house itself – even going into the yard would constitute a violation. He receives no credit against his sentence for this time, despite the significant restrictions on his liberty. Another direct consequence of his conviction and incarceration is that he will be parted from his daughter and aging parents, who have come to rely upon him for transportation to doctors' appointments (when authorized by the court), and for

tasks around the house.

The court can also consider the collateral consequences of Mr. Vaughn's felony convictions as a relevant factor to consider in the "need" for the sentence imposed to reflect just punishment. *See, e.g.*, *U.S. v. Pauley*, 511 F.3d  468, 474-75 (in a case involving a conviction for possession of child pornography after *Gall*, affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)); *see also United States v. Nesbeth,* 2016 U.S. Dist. LEXIS 68731 (EDNY May 24, 2016) (providing a comprehensive review of the collateral consequences of a felony conviction and incorporating them into an analysis of the 3553(a) factors to arrive at a probationary sentence for a young offender convicted of importing and possessing with intent to distribute cocaine).

As a convicted felon he will lose significant rights and privileges and face substantial hurdles obtaining employment, loans and housing. Indeed, the American Bar Association's National Inventory of Collateral Consequences has identified nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons.[1] His felony conviction has also brought significant shame on himself, his family and his community.

Additional punishment will be meted out to Mr. Vaughn when he is placed on supervised

---

[1] *See generally* American Bar Association, Nat'l Inventory of the Collateral Consequences of Conviction, abacollateralconsequences.org. *See also How to Get Around A Criminal Conviction*, N.Y. TIMES, at A22 (Oct. 19, 2015) ("Some 70 million to 100 million people in the United States—more than a quarter of all adults—have a criminal record, and as a result they are subject to tens of thousands of federal and state laws and rules that restrict or prohibit their access to the most basic rights and privileges—from voting, employment and housing to business licensing and parental rights.").

release. The Supreme Court has recognized that supervised release is not merely a slap on the

wrist, as it is severely restricting on the probationer.  *See Gall v. United States*, 128 S. Ct. 586,

595-96 & n.4 (2007) (even non-custodial sentence imposes serious restrictions on one's liberty

and constitutes punishment, not a "free pass").  The terms of supervised release will restrict who

he can associate with, where he can travel, what kind of work he does and even whether he can

open lines of credit. Thus, sentence within the guidelines represents a sufficient punishment in

this case.

*The Need for Deterrence*

A sentence above the guidelines is not necessary to provide specific or general

deterrence. The Sentencing Commission's data reveal that defendants like Mr. Vaughn, who are

in a low criminal history category, employed, do not have a history of substance abuse and are in

their 40s or older at the time of conviction are much less likely to recidivate than other

defendants. *See* Measuring Recidivism: The Criminal History Computation of The Federal

Sentencing Guidelines, May 2004, pp. 11-13 (hereafter "Measuring Recidivism").[2]  Similarly,

research has consistently shown that while the certainty of being caught and punished has a

deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal

deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28

(2006). "Three National Academy of Science panels . . . reached that conclusion, as has every

major survey of the evidence." *Id, see also* Zvi D. Gabbay, Exploring the Limits of the

Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict

Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better

deterrent than its severity."). Other recent comprehensive studies conclude that "there is little

---

[2] http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
publications/2004/200405_Recidivism_Criminal_History.pdf.

evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that that reoffending is either unaffected or increased." Nagin, Daniel S., "Deterrence in the Twenty-First Century," in Crime and Justice in America: 1975-2025, ed. M. Tonry, Chicago, Ill.: University of Chicago Press, 2013: 199-264.

For white collar offenders, studies have found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); *see also* Gabbay, supra, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

Likewise, in this case, both the personal characteristics and the available research support the conclusion that a lengthy prison term is not necessary to achieve the sentencing goal of deterrence. Indeed, while under court supervision on restrictive home detention, Mr. Vaughn had no violations in over a year and four months, providing proof that Mr. Vaughn will not likely reoffend.

### *The Need to Protect the Public*

Like deterrence, the need for incapacitation through incarceration for Mr. Vaughn is low. The Sentencing Commission's own data reveal that 96% of all individuals sentenced with a Category I criminal history did *not* reoffend (as measured by reconviction on a new offense). *See* Measuring Recidivism, p. 6 and Exhibit 2 to the Report. That risk is particularly low when a defendant is married, [3] does not have a history of substance abuse and is over 40 years old at sentencing. *Id. at Exhibits 9 and10 to the Report*. Offenders sentenced to probation or home

---

[3] Mr. Vaughn recognizes that he was not married, but he did establish a stable domestic household to raise his children.

7

confinement have the lowest recidivism rates for all offenders. *Id*.  Finally, offenders like Mr.

Vaughn with zero criminal history points have a rate of reoffending half that of offenders with

one criminal history point. *See* Sent'g Comm'n, Recidivism and the "First Offender," at 13-14

(May 2004) (hereinafter First Offender).  In considering a sentence for Mr. Vaughn, this Court

can consider the statistically low risk of reoffending that he poses.  It is also fair to also take into

account his other personal characteristics as described by the many supporting letters in

determining that the risk of reoffending is low and that incapacitation through incarceration is

not necessary for him.

*The Need to Provide Restitution to Any Victims of the Offense*

A very large amount of restitution will be ordered in this case. Mr. Vaughn has

repeatedly stated his desire to work as soon as possible to begin paying restitution. A sentence

within the guidelines, while lengthy, will enable him to return to the work force, contribute to

society and to earn money to pay restitution .

**Conclusion**

WHEREFORE, given all of the information outlined in this Supplemental Sentencing

Memorandum, and the letters of support, Mr. Vaughn respectfully requests this Court to sentence

him within the discretionary guidelines range. Such a sentence would be "sufficient, but not

greater than necessary" to comply with appropriate sentencing purposes.

Respectfully submitted,

SHERMAN CARL VAUGHN, JR.


_____/s/_____
William J. Dinkin
Virginia Bar Number 31198
Attorney for Sherman Carl Vaughn, Jr.
Stone, Dinkin & Amirshahi, PLC
101 Shockoe Slip, Suite K
Richmond, Virginia 23219

8

Tel: 804-359-0000
Fax: 804-257-5555
bill.dinkin@shockoelaw.com

John A. March
Virginia Bar Number 42338
Attorney for Sherman Carl Vaughn, Jr.
530 E. Main Street, Suite 300
Richmond, VA 23219
Tel: 804-788-4412
Fax: 804-649-8547
cawright2692@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of February, 2018, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a

notification of such filing (NEF) to the following:

Katherine Lee Martin
Stephen E. Anthony
Assistant United States Attorneys
U.S. Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219

_____/s/_____
William J. Dinkin
Virginia Bar Number 31198
Attorney for Sherman Carl Vaughn, Jr.
Stone, Dinkin & Amirshahi, PLC
101 Shockoe Slip, Suite K
Richmond, Virginia 23219
Tel: 804-359-0000
Fax: 804-257-5555
bill.dinkin@shockoelaw.com

John A. March
Virginia Bar Number 42338
Attorney for Sherman Carl Vaughn, Jr.
530 E. Main Street, Suite 300

Richmond, VA 23219
Tel: 804-788-4412
Fax: 804-649-8547
cawright2692@gmail.com